# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# DOCKET NO. 3:98CR288-04-MU

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) **MEMORANDUM AND O R D E R** |
| | ) |
| TERRENCE JABAR CLARK, | ) |
| | ) |
| Defendant. | ) |

**THIS MATTER** is before the Court, most recently, on the "Motion For Inquiry Of Status Of Case" filed by defense counsel on September 27, 2005. The undersigned conducted a hearing on October 6, 2005, at which counsel for the Government (Karen Marston), defense counsel (Richard E. Beam, Jr.), and the Defendant were all present. Also present for the hearing were Robert E. Cochrane, Ph.D., a forensic psychologist with the U.S. Bureau of Prisons who participated in two of the Defendant's <u>four</u> prior psychological and psychiatric evaluations, and several members of the Defendant's family (his mother, Deborah Polk; his uncle, Irvin Polk, a retired corrections officer who helped raise the Defendant; and his aunt, Cindy Polk).

This case, including the issues currently before the Court, has a lengthy history. Briefly, the Defendant was indicted November 2, 1998 and charged with being a part of a drug conspiracy between January 1, 1991 and November 1, 1998. About a month later, on December 1, 1998, defense counsel (Mr. Beam) filed his first "Motion For Determination Of Competency And Motion For Psychiatric Examination" pursuant to 18 U.S.C. § 4241. Counsel recited in support of his Motion that in their confidential communications the Defendant had refused to acknowledge that he had been federally indicted, accused his attorney of being a "federal agent", and at times spoke in

a manner which "could best be characterized as incomprehensible rambling." Defense counsel also noted that the Defendant "became uncontrolled during a prior court appearance and had to be restrained and removed from the courtroom." (Counsel is apparently referring to the Defendant's initial appearance, prior to appointment of counsel, when the Defendant promptly removed his pants and it required four Deputy U.S. Marshals to remove him from the courtroom.)

By Order filed December 10, 1998 (document #39), the Defendant was committed to the custody of the Attorney General for the purpose of conducting a psychiatric and/or psychological evaluation to determine his competency (a) at the time of the alleged offense, and (b) at the present time (that is, competency to assist in his defense). As noted above, since this initial order, the Defendant has been evaluated on four different occasions (at U.S. Bureau of Prisons medical facilities in three different states).

The Defendant's first evaluation was at the U.S. Penitentiary in Atlanta, Georgia. By cover letter dated February 26, 1999 (attaching a Report dated February 16, 1999), the Warden of that institution advised the undersigned that the evaluators had concluded that the Defendant was competent at the time of the alleged offenses, but was not competent at that time to stand trial.

After the Defendant was returned to this District, the undersigned conducted a competency hearing (on March 31, 1999). At that hearing, both the lawyer then representing the Government (Gretchen C. F. Shappert) and defense counsel asked the Court to send the Defendant to a suitable federal facility to determine whether he could be "restored to competency." The undersigned concurred, entering an Order to that on effect April 1, 1999 (document #59).

The Defendant's second evaluation was conducted at the U.S. Medical Center for Federal Prisoners in Springfield, Missouri. In contrast to the first evaluation in Atlanta, by cover letter dated

September 15, 1999 (attaching a Report dated September 10, 1999), the Warden of that institution advised that the evaluation had concluded that the Defendant was competent (at that time) to stand trial. The attached "Forensic Report" reviewed what it called the Defendant's "Hospital Course," in which he was initially regarded as "actively psychotic," but substantially improved over the course of treatment--largely due, in the opinion of the evaluators, to the administration of antipsychotic medication. Although the Clinical Psychologist supervising the evaluation (Richard I. Frederick, Ph.D.) noted that the Defendant "dislikes having to take antipsychotic medication," with the proper administration of such medication Dr. Frederick ultimately concluded that the Defendant had been restored to competency.

Unfortunately, however, this was not the end of the story. After the Defendant returned to Charlotte, he refused or otherwise failed to take his prescribed antipsychotic medication and began again to make irrational statements and otherwise engage in conduct consistent with mental illness. As a result, on March 30, 2001 defense counsel filed a second "Motion For Determination Of Competency And Motion For Psychiatric Examination" (document #137). The undersigned also granted this Motion, following a hearing conducted on April 20, 2001, by Order filed May 1, 2001 (document #138).

As they say, the plot then thickens. The evaluators at FCI Butner concluded that the Defendant had been restored once again to competency, largely due to antipsychotic medication—the caveat being "if he will take it."

And as it turns out, the Defendant often did not take his medication, resulting in defense counsel filing a third motion for evaluation. See "Motion For Determination Of Competency And Motion For Psychiatric Examination" filed December 16, 2002 (document #150), in which Mr.

Beam averred that he had received information (from the Caldwell County Detention Center where the Defendant was then being held ) that the Defendant was "no longer taking his medication." Mr. Beam also averred in that Motion that the Defendant had recently told him, <u>inter alia</u>, that he believed it to be the year 2018 and that he had been "taken off his medication during year 2006." The Defendant was also reported by the detention facility, according to defense counsel, as having been seen and heard "talk[ing] to himself" while alone in his cell.

Once again, the Defendant's motion for evaluation was granted, this time by the late H. Brent McKnight by Order filed January 3, 2003 (document #151).

By cover letter dated February 12, 2003, the Warden of the Federal Correctional Complex in Butner, North Carolina ("Butner") notified the Court that their evaluators had found the Defendant to be "mentally <u>incompetent</u> to the extent that he is unable to understand the nature and consequences of the proceedings filed against him or assist properly in his own defense" (emphasis added). However, most importantly for the purposes of the instant proceedings, the Warden emphasized that the evaluators "believe that with an additional period of hospitalization and treatment, Mr. Clark's competency to stand trial may be restored." The attached "Forensic Evaluation," dated January 24, 2003, is consistent with this summary characterization. Specifically, the Forensic Evaluation at Butner concluded with a recommendation of "a period of competency restoration pursuant to Title 18, Section 4241(d)."

In the meantime, the Supreme Court decided <u>Sell v. United States</u>, 539 U.S. 166 (2003), in which it announced a new and higher standard for "forcible medication" of a defendant--which the Government in this case was then advocating. Specifically, the Supreme Court held that to justify forcible medication, the Government must establish: (1) "that important government interests are

4

at stake [such as] the Government's interest in bringing to trial an individual accused of a serious crime"; (2) "that involuntary medication will significantly further those ... interests," that is, "that administration of the drugs is substantially likely to render the defendant competent to stand trial" and "substantially unlikely to have side effects that will interfere significantly with the defendant's ability to assist counsel in conducting a trial defense, thereby rendering the trial unfair"; (3) that involuntary medication is necessary to further those interests," that is, "that any alternative, less intrusive treatments are unlikely to achieve substantially the same results"; and (4) "that administration of the drugs is medically appropriate, i.e., in the patient's best interest in light of his medical condition." Id. at 180-82 (emphasis in original). Accord United States v. Evans, 404 F.3d 227, 235 (4th Cir. 2005).

In this case, the importance of government interests (element number one) is not at issue. However, the second through fourth elements are before the Court for further findings. Furthermore, as the Court held in Evans, id. at 240-42, the Court must also determine what "the effect that [the specific] antipsychotic medication would have on him as an individual," taking into account the specific "dose range" and any possible "side-effects."

On August 28, 2003, the undersigned entered an Order allowing the forcible medication of the Defendant, which defense counsel appealed. See "Notice of Appeal Order" (document #158). On September 10, 2003, the Honorable Graham C. Mullen, Chief District Judge (to whom this case is assigned), entered an Order staying the Order of the undersigned permitting the Defendant's forcible medication, and setting this matter for a hearing.

At this hearing, conducted October 21, 2003, Judge Mullen heard testimony and argument, but then terminated the hearing prior to making the required Sell findings. Judge Mullen instructed

counsel to consider whether there was evidence of dangerousness (which would obviate the necessity of the Sell findings). Unfortunately, neither counsel for the Defendant nor counsel for the Government took any further steps to address the issues raised by Judge Mullen or otherwise to bring this matter back to the Court's attention for almost two years. Meanwhile, the Defendant has remained in custody, and the issues related to his further evaluation and/or treatment have remained unresolved by the Court.

At the hearing conducted by the undersigned on October 6, 2005, the Government called the forensic psychologist at Butner who had previously participated in the Defendant's two evaluations at that institution (Robert E. Cochrane, Ph.D.) as its only witness. Dr. Cochrane credibly testified that the Defendant had been unable to organize his thoughts or communicate rationally when he was last evaluated at Butner (in 2003); that he believed the Defendant could be restored to competency once again if forcibly medicated under Sell; that the Defendant was more lucid when he was evaluated in 2001 during a period in which he was taking "haldol deconate," which evaluators have proposed should be injected every 28 days; that the alternative of oral medication is less reliable due to the Defendant's repeated refusal to take his medication; that the Defendant's dose would be 200 mg every 28 days; and that possible side effects--including gastro-intestinal symptoms, nausea, neuromuscular effects including "tremors," muscle stiffness, and constipation--are clearly outweighed by the benefits of forcible medication.

The Government also offered what is styled "Literature Regarding Sell v. United States For Defendants With Schizophrenia," which is attached to and incorporated in this Memorandum And Order. In essence, the submitted and attached medical protocol, which is the consensus of

6

psychiatric and psychological experts around the country, favors precisely the kind of treatment the Government is currently requesting.

The undersigned concurs with the above-described assessment, and will permit the requested forcible medication. Specifically, based on the foregoing evidence, the Court finds: (1) that important government interests are at stake, that is, that the Defendant is accused of a serious federal crime; (2) that forcible medication will further those interests by likely rendering the Defendant competent to stand trial and that the possible side effects are unlikely to significantly interfere with the Defendant's assisting counsel or otherwise participating in his defense; (3) that forcible medication is necessary, that is, that any less intrusive methods are unlikely to achieve substantially the same results; and (4) that forcible mediation is medically appropriate in this case, that is, that the drugs to be forcibly administered are in the Defendant's best interest from a strictly medical point of view.

**FOR THE FOREGOING REASONS, IT IS HEREBY ORDERED:**

1. The Defendant shall be committed to the care and custody of the Attorney General of the United States for a period of 120 days, to be calculated beginning upon the Defendant's arrival at the institution where he is to be medicated and evaluated, for the purpose of determining whether he can once again be restored to mental competency.

2. Those evaluating and treating the Defendant, both at any federal facility to which he is hereafter sent <u>and</u> at any local, state, or federal facility to which he may be returned thereafter, are authorized to forcibly medicate the Defendant as set forth herein; provided however, that the authorized medication must be in good faith, medical professionals shall be available to ameliorate

any actual side effects with competent medical treatment, and any forcible medication shall be administered for the purpose of restoring the Defendant to competency to proceed in this case.

3. After Defendant's treatment (including medication) and evaluation, a report of the results of the evaluation and the evaluators' conclusions shall be filed with the Court, which will thereafter be sent by the undersigned to the United States Attorney's Office, the U.S. Probation Office, and the U.S. Marshal.

4. The Clerk is directed to send copies of this Memorandum And Order to counsel for the parties; and to the Honorable Graham C. Mullen.

**SO ORDERED**, this 12th day of October, 2005.

*/s/ Carl Horn, III*
**CARL HORN, III**
**U.S. Magistrate Judge**